BLANK ROME LLP
Attorneys for Plaintiff
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Thomas H. Belknap, Jr.
Alan M. Weigel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Complaint<br><br>of<br><br>ENERGETIC TANK, INC.,<br>as Owner of the M/V ALNIC MC,<br>for Exoneration from or Limitation of<br>Liability | Docket No. 1:18cv1359<br><br>**VERIFIED COMPLAINT** |

   Plaintiff, by its attorneys BLANK ROME LLP, for its verified complaint seeking exoneration from or limitation of liability, alleges upon information and belief as follows:

   1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

   2. Venue is proper in this District pursuant to Rule F(9) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure because the vessel which is the subject of this action has not been attached or arrested in any district, is not presently within any district, and no suit has been commenced in any district court against the vessel's owner.

   3. Plaintiff ENERGETIC TANK, INC. ("Owner") is a corporation organized and existing under the laws of Liberia with its registered office at Monrovia, Liberia. It was at all relevant times the registered owner of the M/V ALNIC MC.

4. The M/V ALNIC MC (IMO No. 9396725) ("ALNIC") is an oil/chemical tanker of 30,040 gross metric tons, registered under the laws of Liberia. The ALNIC was built in 2008, having a length overall of 183 meters, a breadth of 32.2 meters and a molded depth of 19.1 meters.

5. The USS JOHN S. MCCAIN (DDG-56) ("MCCAIN") is a U.S. Navy Arleigh Burke-class guided missile destroyer. The MCCAIN was commissioned in 1994, having a length overall of 154 meters, a beam of 20 meters, and a draft of 9.4 meters.

6. On August 15, 2017, the ALNIC commenced a voyage from Mailiao, Taiwan, bound for Singapore, with a cargo of approximately 11,986 metric tons of processed fuel oil loaded at Mailiao.

7. At 0500 local time on August 21, 2017, the ALNIC was proceeding at a speed of about 9.5 knots in the westbound lane of the Traffic Separation Scheme ("TSS") in the vicinity of Horsburgh Lighthouse, east of the start of the Singapore Straits.

8. At about 0518 local time on August 21, 2017, the MCCAIN was overtaking the ALNIC in the TSS at a speed of approximately 18.5 knots at a distance of approximately 600 meters on ALNIC's starboard side.

9. At about 0520 local time on August 21, 2017, while in the TSS, the MCCAIN made a sudden, unannounced, and unexpected turn to port directly across the ALNIC's bow, causing the ALNIC to collide with MCCAIN at about 0524 local time.

10. As a result of the collision, both vessels sustained damages, the MCCAIN suffered flooding of internal compartments and other damages, ten crewmen on MCCAIN were killed, and certain other MCCAIN crewmembers reportedly suffered injuries.

11. On October 23, 2017, the U.S. Navy issued its report on the collision between the MCCAIN and the ALNIC. (*See* U.S. NAVY, CHIEF OF NAVAL OPERATIONS, UNCLASSIFIED

MEMORANDUM FOR DISTRIBUTION, ENCLOSURE (2), REPORT ON THE COLLISION BETWEEN USS JOHN S MCCAIN (DDG 56) AND MOTOR VESSEL ALNIC MC (Washington, DC Oct. 23, 2017) (https://s3.amazonaws.com/CHINFO/USS+Fitzgerald+and+USS+John+S+McCain+Collision+Reports.pdf) (last visited Feb. 12, 2018) ("U.S. Navy Report").) The U.S. Navy described the events leading up to the collision as follows at pp. 46 – 47:

> At 0519, the Commanding Officer noticed the Helmsman (the watchstander steering the ship) having difficulty maintaining course while also adjusting the throttles for speed control. In response, he ordered the watch team to divide the duties of steering and throttles, maintaining course control with the Helmsman while shifting speed control to another watchstander known as the Lee Helm station, who sat directly next to the Helmsman at the panel to control these two functions, known as the Ship's Control Console. . . . This unplanned shift caused confusion in the watch team, and inadvertently led to steering control transferring to the Lee Helm Station without the knowledge of the watch team. The CO had only ordered speed control shifted. Because he did not know that steering had been transferred to the Lee Helm, the Helmsman perceived a loss of steering.
>
> Steering was never physically lost. Rather, it had been shifted to a different control station and watchstanders failed to recognize this configuration. Complicating this, the steering control transfer to the Lee Helm caused the rudder to go amidships (centerline). Since the Helmsman had been steering 1-4 degrees of right rudder to maintain course before the transfer, the amidships rudder deviated the ship's course to the left.
>
> Additionally, when the Helmsman reported loss of steering, the Commanding Officer slowed the ship to 10 knots and eventually to 5 knots, but the Lee Helmsman reduced only the speed of the port shaft as the throttles were not coupled together (ganged). The starboard shaft continued at 20 knots for another 68 seconds before the Lee Helmsman reduced its speed. The combination of the wrong rudder direction, and the two shafts working opposite to one another in this fashion caused an un-commanded turn to the left (port) into the heavily congested traffic area in close proximity to three ships, including the ALNIC.
>
> Although JOHN S MCCAIN was now on a course to collide with ALNIC, the Commanding Officer and others on the ship's bridge lost situational awareness. No one on the bridge clearly

3

understood the forces acting on the ship, nor did they understand the ALNIC's course and speed relative to JOHN S MCCAIN during the confusion.

Approximately three minutes after the reported loss of steering, JOHN S MCCAIN regained positive steering control at another control station, known as Aft Steering, and the Lee Helm gained control of both throttles for speed and corrected the mismatch between the port and starboard shafts. These actions were too late, and at approximately 0524 JOHN S MCCAIN crossed in front of ALNIC's bow and collided.

12. To date, seven sailors from the MCCAIN have been disciplined for their actions leading up to the collision via a process known as nonjudicial punishment.

13. On January 16, 2018, the U.S. Navy announced that criminal charges were being preferred[1] against the MCCAIN Commanding Officer under the Uniform Code of Military Justice ("UCMJ") for dereliction of duty, negligently hazarding a vessel, and negligent homicide. A dereliction of duty charge under the UCMJ also was preferred against a MCCAIN chief petty officer.

14. The damage to the MCCAIN, the deaths and injuries to its crew, and the damage to the ALNIC were not due to any fault, neglect or want of care on the part of Plaintiff or the ALNIC, or those for whose acts Plaintiff may be responsible.

15. Alternatively, if any such faults did cause or contribute to the aforesaid damage, deaths and injuries, which is denied, such faults were occasioned and occurred without the privity or knowledge of Plaintiff or any of its directors, officers, stockholders, or managing agents.

16. The value of the ALNIC at the termination of the voyage as aforesaid did not exceed the sum of $16,700,000.00. There was pending freight of approximately $68,480. Subject to an express reservation of rights, Plaintiff offers an interim stipulation of value in the amount of

---

[1] Preferring charges is a legal term that means the charges have been formally alleged on a charge sheet, commencing the disciplinary process.


$16,768,480, which value is expected to be substantially less than the amount which has been or will be claimed for any losses or damages arising by reason of the collision.

17. Plaintiff is aware of potential demands or claims against it or the ALNIC arising out of the aforesaid voyage, which plaintiff expects will be brought, but the identity of all such claimants and amounts of their claims has not yet been determined.

18. This complaint is filed within six (6) months after plaintiff received the first written notice of claim from any claimant.

19. Plaintiff claims exoneration from liability for any and all losses or damage sustained during the voyage aforesaid and from any and all claims for damages that have been or may hereafter be made, and plaintiff alleges that it has valid defenses thereto on the facts and the law.

20. Plaintiff further alternatively claims the benefits of limitation of liability provided by 46 U.S.C. §§ 30501 *et seq.* and the various statutes supplementary thereto and amendatory thereof, and to that end Plaintiff is ready and willing to give a stipulation with sufficient surety for the payment into Court of the value of its interest in the ALNIC and its pending freight, as provided for by the aforesaid statute and by Rule F of Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and by the rules and practices of this Court.

WHEREFORE, Plaintiff prays:

(a) That this Court make an order directing Plaintiff to file an interim stipulation to be approved by the Court for the payment into Court for the benefit of claimants of the value of Plaintiffs' interest in the ALNIC at the end of the voyage aforesaid with interest at the rate of 6% *per annum* from the date of said security, or whenever the Court shall so order.

(b) That this Court make an order directing the issuance of a notice to all persons asserting claims with respect to which this complaint seeks exoneration or limitation, admonishing them to file their respective claims with the Clerk of this Court and to serve on Plaintiff's attorneys a copy thereof on or before a date to be named in the notice.

(c) That this Court issue an order enjoining the commencement of or further prosecution of any claims or causes of action against Plaintiff except in this action.

(d) That this Court in this proceeding adjudge that Plaintiff is not liable for any loss or damage arising out of the aforesaid voyage.

(e) In the alternative, if Plaintiff shall be adjudged liable, that such liability be limited to the value of its interest in the ALNIC and its pending freight as aforesaid at the end of this voyage, and that Plaintiff be discharged therefrom upon the surrender of such interest, and that the money surrendered, paid or secured to be paid as aforesaid, be divided pro-rata according to the above-mentioned statutes among such claimants as may duly prove their claim, reserving to all parties any priorities to which they may be legally entitled, and that a decree may be entered discharging Plaintiff from all further liability.

(f) That Plaintiff may have such other and further relief as the justice of the cause may require.

Dated:   New York, New York
         February 15, 2018

                                              BLANK ROME LLP

                                              _____
                                              Thomas H. Belknap, Jr.
                                              Alan M. Weigel
                                              405 Lexington Avenue
                                              New York, New York 10174
                                              (212) 885-5000
                                              *Attorneys for Plaintiff*

693379.06505/106611201v.1

## VERIFICATION

STATE OF NEW YORK         )
                          ) ss:
COUNTY OF NEW YORK        )

Thomas H. Belknap, Jr., being duly sworn, deposes and says:

I am a member of the firm of BLANK ROME LLP, attorneys for Plaintiff, ENERGETIC TANK, INC., herein; I have read the foregoing Complaint and know the contents thereof; and that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

The sources of my information and the grounds for my belief as to those matters stated in the Complaint to be alleged on information and belief are documents and records in files provided by plaintiff and statements made by plaintiff.

The reason this Verification is made by deponent and not by plaintiff is that plaintiff, ENERGETIC TANK, INC., is a foreign entity, none of whose officers are within this district.

_____
Thomas H. Belknap, Jr.

Sworn to before me this
15th day of February 2018.

_____
Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires Nov. 30, 2021

7

693379.06505/106611201v.1