UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In the Matter of the Complaint

of

ENERGETIC TANK, INC.,
as Owner of the M/V ALNIC MC,
for Exoneration from or Limitation of
Liability

------------------------------------------------------------X

1:18-Cv-1359 (PAC) (RWL)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

This case in admiralty involved a collision between the United States Navy destroyer U.S.S. JOHN S. MCCAIN and the M/V ALNIC in the Strait of Singapore on August 21, 2017. After extensive briefing by the Parties—including the United States Government, the owners of the ALNIC ("Petitioner"), personal injury claimants who are U.S. sailors aboard the MCCAIN, and representatives of sailors who died on the MCCAIN—and hearing oral argument on the issue, the Court applied well-established maritime choice-of-law principles[1] and selected the law of Singapore as applicable to substantive matters of liability and the availability and calculation of damages.

Three groups of Claimants (the "Tabak Claimants," the "Hofmann Claimants," and "Claimant Sanfilippo") now move for the Court to reconsider its choice-of-law decision. The Petitioner opposes their motions. For the reasons herein, the motions for reconsideration are DENIED.

---

[1] The maritime choice-of-law test, which the Parties agree is appropriate in this case and which the Court applied, originates with the Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), and was extended in *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959) and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).

# DISCUSSION

The relevant facts are set forth in the Court's Opinion and Order of January 10, 2020 (the "Order"), familiarity with which is presumed here. *In the Matter of Energetic Tank*, 1:18-Cv-1359 (PAC) (RWL), 2020 WL 114517, at *1 (S.D.N.Y. Jan. 10, 2020).

## I.    Standard

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *In re Molycorp, Inc. Secs. Litig.*, 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 (S.D.N.Y. May 23, 2016) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011)). "Reconsideration of a court's prior decision is 'limited' by the doctrine of the law of the case: '[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Matter of Bouchard Transp. Co.*, 14 Civ. 1262 (PAC), 2015 WL 13657786, at *1 (S.D.N.Y. Jan. 8, 2015) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003)).

The party moving for reconsideration must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSK Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *See also In re JPMorgan Chase & Co. Deriv. Litig.*, No. 12 Civ. 03878 (GBD), 2014 WL 3778181, at *1 (S.D.N.Y. July 30, 2014). The court will not redo its ruling "unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Official Comm. of Unsecured Creditors*, 322 F.3d at 167 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

A motion for reconsideration "may not be used to advance new facts, issues or arguments not previously presented to the Court," *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001), nor be used as a vehicle to introduce "new theories or adduce new evidence in response to the court's rulings." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (quoting *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 768 F. Supp. 115, 116 (S.D.N.Y. 1991)).

## II.  Analysis

The Claimants contest in their three separate motions[2] that the Court should reconsider its Order choosing Singapore law as applicable to all substantive matters of liability and the availability and calculation of damages in this case. The Court reviewed all the briefing, gave all Parties equal opportunity to present and supplement their positions at oral argument, and gave full consideration and credit to all Parties in the Order the Court is now asked to reconsider. There is nothing in the Claimants' motions for reconsideration that the Court did not consider fully in its Order.

---

[2] Common to the Claimants' motions are their arguments regarding footnote 1 in the Court's Order, which noted for purposes of convenience that, "[g]enerally, the Claimants adopt the opposition briefing submitted by the Government, and so the Government's brief is primarily cited in this Opinion." *Energetic Tank*, 2020 WL 114517, at *1 n. 1. The Claimants see this footnote as "dismissive" and an indication that "they were not included in the 'battle' in the first place." Dkt. 261, at 4. Indeed, the Tabak Claimants submitted a nine-page brief on the initial motion. Dkt. 215. The Hofmann Claimants submitted a seven-page brief. Dkt. 216. Many of the other Claimants, however, explicitly adopted the Government's briefing either as supplementary to their own submissions—as with the Hofmann Claimants, Dkt. 216, at 6—or as representative, along with the briefing of the Tabak and Hofmann Claimants, of their own positions. Dkt. 218 ("Sanfilippo believes that these filings adequately state his position and that further comment is unnecessary."); Dkt. 219; Dkt. 220 ("Claimants believe that these filings adequately state their position."). While faulting the Court, the Hofmann Claimants continue to use this style of interlocking briefing in their reply on this motion for reconsideration. Dkt. 265, at 1 n. 1. The Court's footnote 1 did nothing more than reflect this approach chosen by the Claimants.

3

The Court's Order followed *Lauritzen*'s direction: it "ascertain[ed] and valu[ed] points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen*, 345 U.S. at 582. In doing so, and adhering throughout to precedent, it fulfilled this principle, which the Second Circuit has called "the basic tenet upon which *Lauritzen* is premised." *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 499 (2d Cir. 2013). While it is clear that the movants disagree with the Court's decision, that is not sufficient to overturn its decision. *See Sorenson v. Friedman*, No. 10 Civ. 4596 (JGK), 2012 WL 1155099, at *1 (S.D.N.Y. Apr. 5, 2012).

The moving Claimants here uniformly ignore that motions for reconsideration "are not vehicles for 'taking a 'second bite' at the apple.'" *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## A. The Tabak Claimants

The 13 Tabak Claimants contend that U.S. law should apply to liability and that the Court "overlooked case law concerning collisions between vessels in foreign waters that applied U.S. maritime law."[3] Dkt. 255, at 3. They provide a single "*see*" cite to a case, but the cited case is not binding on the Court and certainly is not a "controlling decision[] . . . that the court overlooked." *Shrader*, 70 F.3d at 257. The Court has already laid out its reasoning for rejecting

---

[3] The Tabak Claimants state that they bring their motion pursuant to Federal Rule of Civil Procedure 60(b). Dkt. 254. However, nowhere in their motion papers do they explain why Rule 60(b) relief is available on this Order. *See Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 1739893, at *2 n. 1 (S.D.N.Y. June 16, 2009) ("By its express terms, Rule 60(b) applies only to final orders and not interlocutory ones."). They do not specify which of Rule 60(b)'s six subparts the motion is brought, or how their motion meets the demanding bar set for relief under Rule 60(b). *See United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (stating that Rule 60(b) relief "is generally not favored and is properly granted only upon a showing of exceptional circumstances").

4

the argument regarding Liberia's adoption of U.S. maritime law that the Tabak Claimants recite again here. *Energetic Tank*, 2020 WL 114517, at *4 n. 5.

The Tabak Claimants also argue that U.S. law should be applied as to damages.[4] The portion on damages in the Tabak Claimant's brief on the initial motion, which they now contend the Court overlooked, occupied eight lines of text in that brief, and cited only two cases, one from the District of Vermont and one from the Eastern District of New York. Dkt. 215 at 8–9. The Court did not overlook these arguments—instead, it "considered and rejected" them. *See Wultz v. Bank of China Ltd.*, 56 F. Supp. 3d 276, 278 (S.D.N.Y. 2014). The Court specifically cited authorities pointing to application of the law of the place of the wrong to both liability and damages. *Energetic Tank*, 2020 WL 114517, at *2, *4. The Court inquired as to the application of different law to liability and damages at oral argument, but the Parties agreed that it was a "package." Tr., Dkt. 236, at 35:3–11. In other words, they agreed that the decision on liability and damages was to be the same. The Tabak Claimants on their motion for reconsideration again only cite decisions that have no controlling effect on this Court, and which bear no resemblance to the facts in this case. Dkt. 255, at 4.

The Tabak Claimants in their reply brief on the instant motion argue for the first time, and citing cases that require no different result from this Court, that the Petitioner should be made to prove the content of the foreign law, and that the Court should make a finding that

---

[4] The Tabak Claimants also claim that the Government has a lesser interest in damages. The Court notes that, in fact, as of the last representation on the matter to the Court, the Government also had a strong incentive to argue damages on the initial motion. Dkt. 240, at 2 n. 1. All the movant Claimants argue that the Court erred in applying Singapore law to damages as well as liability. But they have never advanced any legal authority that compels this Court to apply a different substantive law to damages.

5

Singapore law and U.S. law on damages are the same. Dkt. 264, at 3. That is too little, and too late.

The Court has considered the submissions by the Tabak Claimants and found no support for reconsideration. The motion for reconsideration by the Tabak Claimants is accordingly denied.

### B. The Hofmann Claimants

The Hofmann Claimants are 27 individuals who are U.S. Navy sailors injured aboard the MCCAIN. Dkt. 261, at 1. As with the Tabak Claimants, they contest the Court's ruling as to both liability and damages, but place special emphasis on damages. *Id.* at 1 n. 1. The Hofmann Claimants renew their argument that *Lauritzen* rendered the place of the wrong "nearly irrelevant" for choice-of-law purposes in collision cases, and elevated the law of the flag—an argument the Court considered thoroughly in its Order. *See Energetic Tank*, 2020 WL 114517, at *5.

The Hofmann Claimants contend that the Court's Order holding that Singapore law applies to this case constitutes clear error or works a manifest injustice. Dkt. 261, at 3–4. The Claimants raise the same arguments regarding Singapore and Malaysia's claims to the area surrounding the collision site that were addressed by the Court. *Energetic Tank*, 2020 WL 114517, at *6–7. The Court made abundantly clear in its Order that its holding was in line with *Lauritzen* and subsequent collision cases confronting a choice of law.[5] The Claimants disagree,

---

[5] The Hofmann Claimants go so far as to say in their reply briefing that "[t]he Court in its decision specifically states that it was not applying a *Lauritzen* analysis," Dkt. 265, at 7, and that it is the Court's "express holding that *Lauritzen* does not apply to collision situations." Dkt. 265, at 7–8. They quote the Court's statement that the *Lauritzen* case is "entirely unsuited" to the factually and legally complex case before this Court. *Id.* at 8. Only the most willful misreading of the Court's Opinion could reach the conclusion that it did not apply *Lauritzen*. *Energetic Tank*, 2020 WL 114517, at *3–5 (applying the *Lauritzen* factors).

6

*see* Dkt. 261, at 5–6, but mere disagreement does not justify reconsideration. The Claimants' arguments that because Liberia has adopted U.S. general maritime law the ALNIC's Liberian flag is really a U.S. flag was considered and weighed along with the other *Lauritzen* factors by this Court. *Energetic Tank*, 2020 WL 114517, at *4 n. 5. The cases cited by the Hofmann Claimants raise no novel, and certainly no binding, considerations of law not previously considered by this Court, and instead only affirm the flexibility observed in the Second Circuit after *Lauritzen* to district courts faced with choice-of-law determinations in complex factual scenarios. *See Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1026 (2d Cir. 1973).

The Hofmann Claimants also in their reply brief for the first time take up the arguments by Claimant Sanfilippo, described *infra* Part II.C., regarding *dépeçage*. Apart from their belated adoption of the argument, most of the authorities cited are from outside this Circuit, and none bind this Court. Dkt. 265, at 9–13.

The Court has considered the submissions by the Hofmann Claimants and found no support for reconsideration; the motion for reconsideration is accordingly denied.

### C. Claimant Sanfilippo

Finally, Claimant Sanfilippo moves either for reconsideration and the application of U.S. law, or for application of the principle of *dépeçage*. Claimant Sanfilippo also raises the same arguments regarding claims to waters surrounding the collision site that Claimants have raised in all their papers, and which this Court considered. *Energetic Tank*, 2020 WL 114517, at *6–7.

He cites to a Supreme Court case, *United States v. Flores*, 289 U.S. 137, 159 (1933), concerned with the duty of federal courts to apply U.S. law to crimes committed on U.S.-flagged vessels, but gives no explanation for why that holding is pertinent here. The Claimant provides a "*see, e.g.*" cite to *La Seguridad de Centroamerica S.A. v. M/V Global Mariner*, No. 01 Civ. 0456 (JSM), 2002 WL 530979, at *5 (S.D.N.Y. Apr. 9, 2002), which is purported to support the

principle that the law of the flag is particularly relevant in collision cases. Dkt. 259, at 5. The cited case instead only affirms that the reasoning behind the law of the flag "applies most clearly . . . to events that take place completely on board a ship, as when a crew member is injured, rather than to events that involve other ships, and where the fact that the ships were in a particular location is relevant to the facts of the case"—for example, a collision between vessels of different flags in the Strait of Singapore. *La Seguridad*, 2002 WL 530979, at *5. In any event, the case does not bind the Court.[6]

Claimant Sanfilippo also argues that the Court did not apply *Lauritzen*, *Rhoditis*, and *Romero*, ignoring, like the Tabak and Hofmann Claimants, that the Court explicitly followed these cases. *Energetic Tank*, 2020 WL 114517, at *5 (applying the *Lauritzen* factors and holding that "[h]ere, the only factor that points convincingly to any relevant body of law is the place of the wrong"); Dkt. 259, at 7. The Claimant's argument regarding the "extra-territorial application of United States law . . . to protect United States[] maritime interests wherever they may be located," *id.* at 10, is the same argument the Claimants have made vigorously before, and which was explicitly considered and rejected by the Court. *Energetic Tank*, 2020 WL 114517, at *5 ("[I]t cannot be the case that U.S. law applies every time a Navy ship is involved in a collision anywhere in the world."); *see* Tr., Dkt. 236, at 33:15–34:8.

Claimant Sanfilippo argues in the alternative for the application of *dépeçage*. "Depeçage doctrine recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense." *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000). One district court in this Circuit has called

---

[6] All of the movant Claimants cite *La Seguridad*. Dkt. 255, at 2; Dkt. 259, at 5; Dkt. 265, at 8. It is not controlling on this Court, and certainly does not compel reconsideration.

8

*dépeçage* "an unusual and drastic principle that should be applied with the greatest trepidation." *Crucible Materials Corp. v. Aetna Cas. & Sur. Co.*, 228 F. Supp. 2d 182, 200 (N.D.N.Y. 2001). *Dépeçage* was not argued in Sanfilippo's briefing on the choice-of-law motion,[7] and was mentioned at oral argument only once, fleetingly, by counsel for a group of wrongful death claimants (who do not move for reconsideration).[8] Tr., Dkt. 236, at 34:18–25. Yet the word suddenly leaps from many pages of the movant Claimants' briefs on this motion. Claimant Sanfilippo attempts to argue that the concept of *dépeçage* was somehow stowed away in a paragraph of the Tabak Claimants' initial brief that never mentioned the word. Dkt. 266, at 1. It is true that one of the two cases cited in that paragraph does contain the word *dépeçage*, but the briefings did not. The Court declines to adopt a practice of reading absent words into parties'

---

[7] Claimant Sanfilippo's submission on the initial motion read, in full:

> Now comes claimant, Francesco Sanfilippo, by his undersigned counsel and joins in and adopts the opposition to the application of Singapore law filed by the United States (Doc. 217), the Ebarb Claimants (Doc. 215), and the Hofmann & Schweitzer Claimants (Doc. 216). Sanfilippo believes that these filings adequately state his position and that further comment is unnecessary."

Dkt. 218. None of the briefs he took as his own mentioned *dépeçage*.

[8] The entirety of the discussion of *dépeçage* in this case prior to the present motions was an uncertain suggestion at oral argument on November 14, 2019 by counsel for Claimants other than those who file the present motions:

> "[T]here is a concept in the law—and I can never say it correctly—*dépeçage,* but essentially that allows you to apply different laws to different phases of the trial. So you could apply one law to apportionment, one law to damages. I'm not saying that's necessary here, but depending on what the Court's ruling is, we might want to ask the Court to apply a different law on damages.

Tr., Dkt. 236, at 34:18–25. Claimant Sanfilippo now appears to argue that this stray mention by counsel for a separate set of Claimants preserved a right for him to argue for *dépeçage* at some unspecified later date. Dkt. 266, at 3. This is surely not grounds for reconsideration.

9

briefings. No legal or factual basis was ever articulated for the application of the principle to this case.

The Court has considered the submissions by Claimant Sanfilippo and found no support for reconsideration. The motion for reconsideration by Claimant Sanfilippo is accordingly denied.

## **CONCLUSION**

The motions for reconsideration are DENIED. The Clerk of Court is directed to close the motions at Dockets 254, 256, and 258.

Dated: New York, New York
February 27, 2020

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge