UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                                            :

In the Matter of the Complaint                             :

                    of                                                 :                1:18-cv-1359 (PAC) (RWL)

ENERGETIC TANK, INC.,                                :
as Owner of the M/V ALNIC MC,                :                **OPINION AND ORDER**
for Exoneration from or Limitation of          :
Liability                                                   :

------------------------------------------------------------------X

        This admiralty case involves a collision between the U.S.S. JOHN S. MCCAIN, a Navy destroyer, and the M/V ALINC, a Liberian-flagged merchant vessel, in the Strait of Singapore in August 2017. The owners of the ALINC ("Petitioner") retained an expert witness to testify at trial: Daniel E. Voth, a retired Captain in the U.S. Navy. Petitioner now seeks an order protecting Captain Voth from any sort of future reprisal for his testimony under the Navy's *Touhy* regulations. The United States opposes the motion. The motion is DENIED because Petitioner's motion would require this Court to issue an advisory opinion forbidden by Article III of the Constitution.

## BACKGROUND

        Captain Voth served as a Navy Surface Warfare Officer for thirty years. Declaration of Daniel E. Voth ("Voth Decl.") ¶ 2, ECF No. 309. He retired in August 2018 and began receiving retirement benefits, including pension and insurance, from the Government. *Id.* Petitioner retained Captain Voth in November 2019 as an expert witness on naval shipboard operations. *Id.* ¶ 3. Captain Voth then prepared an expert report in April 2020. *Id.* He was deposed in September 2020. *Id.*

        During Captain Voth's deposition, counsel for the Government asked Captain Voth whether he knew about certain Navy regulations: Namely, Secretary of the Navy Instruction

1

("SECNAVISNT") 5820.8A. *Id.* ¶ 4. These are also known as the Navy's *Touhy* regulations, named after the Supreme Court case *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In a nutshell, these *Touhy* regulations permit the Navy to regulate when its personnel—including retired personnel—can testify as expert witnesses in certain Navy-related matters. *See generally* SECNAVISNT 5820.8A, *reprinted in* Voth Decl. Ex. A, ECF No. 309-1.

Captain Voth stated at his deposition that he was not aware of the *Touhy* regulations. Voth Decl. ¶ 4. Captain Voth was then asked whether, as a retired Navy officer, he knew he had violated the *Touhy* regulations by writing an expert report in this case without securing written permission from the Navy. *Id.* Captain Voth answered that his actions appeared to constitute a violation. *Id.*

After Captain Voth's deposition, on November 11, 2020 Petitioner asked the Government if it would move to disqualify Captain Voth from testifying under the Navy's *Touhy* regulations. Voth Decl. ¶ 5. The Government, in a letter dated November 12, 2020, responded it would not move to disqualify Captain Voth. *See* Voth Decl. Ex. C, ECF No. 309-3. Radio silence followed until September 2021, when after "further consideration" Captain Voth became "extremely concerned" and asked Petitioner to seek additional guarantees from the Government that its agencies—including the Navy and the Department of Defense—would not take any other action against Captain Voth under the *Touhy* regulations. *See* Voth Decl. ¶ 6, 7; *id.* Ex. D, ECF No. 309-4. The Government did not respond to Petitioner's request. Voth Decl. ¶ 6.

Captain Voth asserts a fear the Government could punish him under the *Touhy* regulations—which could cause him to lose his retirement benefits. *Id.* ¶ 7. Captain Voth claims that without "adequate assurance" of protection from administrative or criminal prosecution, he will decline to testify in this case. *Id.*

In light of Captain Voth's concerns, Petitioner filed a proposed protective order regarding Captain Voth and his anticipated testimony at trial. *See* Pet.'s Proposed Order of Protection 1, ECF No. 308-1. The proposed order would prevent the United States "from interfering with the participation" of Captain Voth in this case. *Id.* It also would prevent "the United States, by the Department of the Navy and/or the Department of Defense or otherwise . . . from taking any action whatsoever" against Captain Voth. *Id.* at 1–2. Specifically, it would encompass any actions—"administrative, non-judicial, judicial, or otherwise"—by the Government against Captain Voth under the Navy's *Touhy* regulations, "in connection with any aspect of his participation in this matter as an expert witness." *Id.*

Petitioner filed this motion on September 28, 2021. *See* Pet.'s Notice of Mot. for Protective Order, ECF No. 307; Pet.'s Br. Supp. Mot. ("Pet.'s Br."), ECF No. 308. The Government filed its opposition on October 6, 2021. *See* Govt.'s Br. Opp. Mot. ("Govt.'s Br."), ECF No. 313. Petitioner filed a short reply on October 8, 2021. *See* Pet.'s Reply Supp. Mot. ("Pet.'s Reply"), ECF No. 315. Phase I of trial in this case,[1] at which Captain Voth would testify, is scheduled to begin November 1, 2021.

## DISCUSSION

### I.  Legal Standards

Federal Rule of Civil Procedure 26(c) allows the Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed R. Civ. P. 26(c). "Ordinarily, good cause [for a protective order] exists when a

---

[1] The Court has divided this case into two trial phases. See Order Structuring Trial 1–2, ECF No. 240. Phase I will determine apportionment of fault for the collision between Petitioner and the Government. *See id.* It will be tried as a bench trial in admiralty. *See id.* Phase II will then adjudicate the personal injury and wrongful death claims. *See id.*

3

party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001,* 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotations and citations omitted). Under Rule 26(c), the Court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984). The decision about whether to issue a protective order "is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion." *Dove v. Atl. Capital Corp.,* 963 F.2d 15, 19 (2d Cir. 1992).

A motion for a Rule 26(c) protective order—like any form of relief granted by a federal court—is subject to the constraints of Article III of the Constitution. This Court "may not exercise subject matter jurisdiction absent compliance with Article III of the Constitution. Article III limits judicial authority to 'Cases' and 'Controversies.'" *In re Joint E. & S. Dist. Asbestos Litig.,* 14 F.3d 726, 730 (2d Cir. 1993) (quoting U.S. Const. art. III, § 2).

The ripeness doctrine derives from this "Cases and Controversies" requirement. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003). "The doctrine of constitutional ripeness prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,* 725 F.3d 65, 110 (2d Cir. 2013) (quotation marks omitted). This ripeness doctrine "overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency,* 999 F.3d 130, 149 (2d Cir. 2021) (cleaned up). In examining the application of a statute or regulation to a party, when the Court has "'no idea whether or when such [a sanction] will be ordered,' the

4

issue is not fit for adjudication." *Texas v. United States*, 523 U.S. 296, 300 (1998) (alteration in original) (quoting *Toilet Goods Assn., Inc. v. Gardner*, 387 U.S. 158, 163 (1967)).

## II. Application

Petitioner claims "a Protective Order is required to allow Captain Voth to testify for [Petitioner] without fear of severe consequences." Pet.'s Br. at 2. Specifically, Petitioner points to the Navy's *Touhy* regulations as a means by which the Government could punish Captain Voth for testifying about Navy facts or procedures. *Id.* Petitioner raises several arguments why the *Touhy* regulations should not apply to Captain Voth's participation in this matter. *See id.* at 2, 6–11.

Whatever the merits of Petitioner's argument, its fears for Captain Voth are premature. Most of Petitioner's cited cases stand for the proposition that the Government cannot use *Touhy* regulations as a privilege to disqualify a witness from testifying at trial (or prevent interviews with potential witnesses in the first place). *See U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 513 (S.D. Ohio 1999); *McElya v. Sterling Med., Inc.*, 129 F.R.D. 510, 514 (W.D. Tenn. 1990) (Navy attempted to use *Touhy* regulations to impose limits on discovery). But these cases are inapplicable here because the Government has made clear it will take no action against Captain Voth before he testifies. In its November 12, 2020 letter to Petitioner, the Government promised it will not move to disqualify Captain Voth from participating in this case under the *Touhy* regulations. *See* Voth Decl. Ex. C. The Government reaffirmed that promise in its opposition to this motion. *See* Govt.'s Br. at 1, 12. Thus, the Court need not reach the applicability of the *Touhy* regulations to Captain Voth's testimony because the Court will hold the Government to its promise: The *Touhy* regulations will not be used to bar Captain Voth from testifying at trial.

Petitioner nevertheless suggests the Government could chill Captain Voth's testimony by threatening to wield the *Touhy* regulations against him *after* he has testified. *See* Pet.'s Br. at 12;

Pet.'s Reply at 4. It also identifies two other possible sources of discipline: The Uniform Code of Military Justice, 10 U.S.C. § 47 *et seq.*, and the Ethics in Government Act, 18 U.S.C. § 207. *See* Pet. Br. at 1. But Petitioner's concerns for Captain Voth are too speculative to warrant a protective order.

To be sure, Captain Voth, who relies on his retirement benefits, stated he will not testify further in this case without adequate assurance of protection from discipline. But the mere fact that a law *could* apply to a witness does not necessarily imply a threat sufficient to warrant a protective order. Without some indication of impending Government retaliation, issuing an order protecting the witness from criminal or civil liability for his testimony is "not an issue ripe for decision" when that witness has not even testified yet. *Conrad v. United Instruments, Inc.*, 988 F. Supp. 1223, 1225 (W.D. Wis. 1997). In declining to issue a protective order for an expert witness, the *Conrad* Court put the problem succinctly:

> Whether [the witness] will be criminally or civilly liable for the testimony he gives in this matter, should he decide to testify, is not an issue ripe for decision. It rests upon too many contingencies. It need not be decided if [the witness] chooses not to testify, if the government decides not to prosecute or fine him, or if a Grand Jury decides not to issue an indictment in the event the government seeks a criminal prosecution. Should the issue survive these contingencies, it may be resolved by a court applying the law to a record of that which [the witness] actually said. This Court declines to advise the plaintiffs as to the scope of a federal statute in order to resolve a hypothetical and abstract dispute that may never materialize.

*Id.* There is a sparsity of legal authority, but the few other courts to have answered this question have declined to issue a protective order as well.[2] *See United States v. Williams*, No. 2:13-cr-21,

---

[2] Petitioner relies primarily on *Chandler v. United States* to support the broad prospective intervention it seeks. No. 2:13-cv-2553, 2016 WL 4443709 (W.D. La. Aug. 19, 2016). In *Chandler*, the district court reasoned that Army regulations similar to the Navy's *Touhy* regulations could not bar former Army employees from testifying as expert witnesses. *See id.* at *3. The Court found "the specter of severe consequences, such as the loss of benefits" could impermissibly stifle testimony against the Government. *Id.* But this reasoning was dicta: The *Chandler* Court declined to issue a "broad" protective order because the plaintiff no longer had an expert witness retained.

6

2016 WL 2937466, at *3 (N.D. Ga. Apr. 1, 2016), *report and recommendation adopted*, 2016 WL 2903239 (N.D. Ga. May 18, 2016); *In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 399, 403 (E.D. Mich. 1989).

Indeed, one of the cases cited by Plaintiff determined it would be premature to intervene on behalf of an expert witness whose testimony "may expose him to criminal prosecution, under the Ethics in Government Act." *Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 382 (2010). The court reasoned the "potential for criminal liability" was merely "a factor that [the witness] would weigh in considering whether to continue in his role as an expert witness . . . ." *Id.* However, "unless and until [the witness] is subpoenaed and asserts his Fifth Amendment right against self-incrimination, the question of criminal sanctions is too remote and hypothetical" to weigh in favor of a protective order allowing the witness to testify. *Id.* Likewise here, Captain Voth must weigh his own risk of liability—real or not—in deciding whether to continue as an expert witness in this case. The Court cannot speculate at his exposure on his behalf.

This reasoning persists even though the Government's counsel warned Captain Voth during his deposition that he may have violated the Navy's *Touhy* regulations. Courts have held this type of "threat" made by the Government during pre-trial discovery is not imminent enough to make the issue of witness liability ripe for a court's review. *See Conrad*, 988 F. Supp. at 1224, 1225 (no protective order where Government counsel told witness "the United States would seek to prosecute [the witness] to the fullest extent of the law" if he testified); *Detroit Metro. Airport*, 737 F. Supp. at 400, 403 (Government notified witness by letter that he may have violated the Ethics in Government Act and therefore could be subject to criminal and

---

*See id.* Whatever the persuasiveness of this single out-of-circuit opinion, the weight of authority on this issue holds the opposite. *See* cases cited *infra* p. 6–7.

administrative sanctions). "[E]ven in the face of the government's threats, the Court could offer only an advisory opinion at best." *Conrad*, 988 F. Supp. at 1225. Any hypothetical sanctions—whether under the *Touhy* regulations, the Ethics in Government Act, the Uniform Code of Military Justice, or otherwise—have not "been set in motion against individuals on whose behalf relief [is] sought, because an occasion for doing so [has] not arisen." *Int'l Longshoremen's & Warehousemen's Union, Loc. 37 v. Boyd*, 347 U.S. 222, 223 (1954). Captain Voth has not testified at trial; the Court does not know what he will say on the stand. And the Court is unaware of any proceedings set in motion against him. The Government states it has "no information at all that any agency of the United States contemplates any future civil, administrative, or criminal action against" Captain Voth. Govt.'s Br. at 2. To issue a protective order for Captain Voth at this pre-trial stage of proceedings would "involve[] too remote and abstract an inquiry for the proper exercise of the judicial function." *Boyd*, 347 U.S. at 223. This Court lacks the power under Article III to act otherwise.[3] *See Texas v. United States*, 523 U.S. at 300.

---

[3] Because the Court denies this motion on ripeness grounds, it does not address the Government's alternative argument that Petitioner lacks standing to seek a protective order on behalf of a witness. *Cf. Res. Invs., Inc. v. United States*, 93 Fed. Cl. at 382 (denying motion for protective order on both ripeness and standing grounds); *Detroit Metro. Airport*, 737 F. Supp. at 403–04 (same).

Case 1:18-cv-01359-PAC   Document 321   Filed 10/14/21   Page 9 of 9

## CONCLUSION

Petitioner's motion for a protective order for Captain Voth is DENIED. The Court notes the Government's representation that it will not move to disqualify Captain Voth as an expert witness under the Navy's *Touhy* regulations, SECNAVISNT 5820.8A. The Clerk of the Court is instructed to close the motion at Docket number 307.

Dated: New York, New York
   October 14, 2021

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge