UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Complaint

of

ENERGETIC TANK, INC.,
as Owner of the M/V ALNIC MC,
for Exoneration from or Limitation of Liability

No. 18-cv-1359 (PAC) (RWL)

**OPINION & ORDER**

This case concerns a collision that occurred on August 21, 2017, in the Singapore Strait between a United States Navy warship and an oil tanker. Petitioner Energetic Tank, Inc. filed the instant action seeking either exoneration or limitation of its liability from the collision. The United States and dozens of injured or deceased sailors (the "Personal Injury Claimants" and "Wrongful Death Claimants," respectively) then brought claims against Petitioner, seeking damages sounding in tort. The Court divided proceedings into two discrete phases: liability for the collision ("Phase I"), and determination of damages owed to the Claimants ("Phase II").[1] Before issuing the final Judgment from Phase I, the Court solicited additional briefing on, *inter alia*, whether any of the Claimants were entitled to a jury trial in Phase II. *See* ECF No. 386. The Court now determines that both groups of Claimants will proceed before a jury in Phase II.

---

[1] Once limitation is denied, claims are no longer subject to limitation and claimants may elect to pursue their independent, common-law actions. *See In re Wood's Petition*, 230 F.2d 197, 199 n.11 (2d Cir. 1956); *see also In re City of New York*, 03-cv-6049 Hearing Tr., ECF No. 926 2:1–25 (consolidating cases within limitation of liability proceeding and analyzing availability of jury trial based on characteristics of each individual claim). The Court previously determined that it would try Phase II on agreement by the parties. ECF Nos. 208, 240. Although the Court did not explicitly cite Fed. R. Civ. Pro 42 as authorizing its ability to consolidate the Phase II claims for trial, it does so here *nunc pro tunc*. *See* Fed. R. Civ. Pro. 42(a); *In re Eastern and South Districts Asbestos Litig.*, 772 F. Supp. 1380, 1388 (E.D.N.Y. 1991), *rev'd on other grounds*, *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992).

1

The Court assumes familiarity with the record as set forth in its previous Opinion and therefore only briefly summarizes it here. *See generally Matter of Energetic Tank, Inc.*, No. 18CV1359, 2022 WL 2159786 (S.D.N.Y. June 15, 2022) (the "Phase I Opinion"). Petitioner initiated this action by filing a complaint seeking relief under the Limitation of Liability Act. *See* 46 U.S.C. §§ 30501 *et seq.*[2] In Phase I, following a bench trial, the Court determined Petitioner was 20% at fault for the collision and the United States was 80% at fault and awarded each side damages. The Court also denied Petitioner exoneration or limitation of its liability. *See* Phase I Opinion at *34–35.[3]

The Court previously issued a choice-of-law decision, holding that Singapore law applies in this case to substantive issues of liability and damages. *See Matter of Energetic Tank, Inc.*, No. 118CV1359PACRWL, 2020 WL 114517, at *7 (S.D.N.Y. Jan. 10, 2020) ("Choice of Law Opinion"), *reconsideration denied*, No. 118CV1359PACRWL, 2020 WL 978257 (S.D.N.Y. Feb. 28, 2020). The Court reiterates that Singapore law governs the substantive aspects of Phase II. However, the parties agree that the right to a jury trial in federal court is a matter of federal law, *see McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1314 (2d Cir. 1993), and thus, United States law governs the availability of a jury trial.

---

[2] A limitation of liability action is an admiralty proceeding that "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001).

[3] The Petitioner and the United States have both filed interlocutory appeals of the Phase I Opinion. *See* ECF Nos. 409, 412. The United States' appeal also challenges the Court's determination that Singapore law applies to substantive matters of liability and damages. The Court determined that that a stay was not in the interest of justice and Phase II would continue pending the appeal. *See* ECF No. 419. Petitioner also filed an interlocutory appeal of the Court's opinion dismissing Petitioner's contribution claim against the United States for lack of jurisdiction. *See* ECF Nos. 419, 421.

2

I. **UNDER THE "SAVING TO SUITORS CLAUSE," THE PERSONAL INJURY CLAIMANTS MAY TRY THEIR CLAIMS BEFORE A JURY**

While "the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." *Fitzgerald v. U. S. Lines Co.*, 374 U.S. 16, 20 (1963) (citations omitted). Further, under 28 U.S.C. § 1333(1) (known as the "saving to suitors" clause), admiralty and maritime cases reserve "to suitors 'in all cases all other remedies to which they are otherwise entitled'", including the right to a jury trial. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444, 455 (2001) (quoting 28 U.S.C. § 1333(1)). Because a claimant is otherwise enjoined from proceeding in other fora during a limitation action, there is a "'recurring and inherent conflict in admiralty law' between the non-jury admiralty tradition and a claimant's right to jury trial." *Complaint of Poling Trans. Corp.*, 776 F. Supp. 779, 782 (S.D.N.Y. 1991) (quoting *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754 (2d Cir. 1988)). "[A]dmiralty courts must strive whenever possible to promote the policies underlying both provisions." *Dammers*, 836 F.2d at 760. After all, the Limitation of Liability Act was not designed to "enabl[e] a vessel owner to take a tort victim's case away from a jury" but rather "was fashioned by Congress as a shield rather than a sword." *Poling Trans. Corp.*, 776 F. Supp 779 at 786 (quotations and citations omitted).

To promote both the non-jury admiralty tradition and a claimant's right to a jury trial, a non-admiralty claim "with independent jurisdictional basis normally carrying a jury right . . . may be tried to the jury." *Poling*, 776 F. Supp at 783 (internal quotations omitted); *see also Terracciano v. McAlinden Const. Co.*, 485 F.2d 304, 309 n.16 (2d Cir. 1973). One such independent jurisdictional basis is diversity jurisdiction based on common law tort claims, provided there are independent grounds for diversity of citizenship. *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113

3

F.3d 1050, 1054 (9th Cir. 1997); *see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360–61 (1962).

Consistent with the jury right preserved in the "saving to suitors clause," the Personal Injury Claimants may try their claims before a jury. Although Petitioner's limitation proceeding is quintessentially an admiralty action, the Court already adjudicated the Petitioner's limitation claims and liability for the crash in Phase I. *See* the Phase I Opinion. What remains in Phase II are the Personal Injury Claimants claims sounding in tort—claims that provide an independent basis for granting a jury trial within this proceeding. *See Ghotra* 113 F.3d at 1054–56 ("[N]egligence . . . [is an] in personam maritime claim[] that could have been brought 'at common law.'").

The Court now must determine whether "the requirements of diversity of citizenship and amount in controversy are met." *Ghotra by Ghotra*, 113 F.3d at 1054. The Court finds they are. "Consolidated cases do not lose their separate identity, and thus diversity is evaluated in terms of each individual case." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 569 (2d Cir. 2005) (internal citation omitted). The parties agree that Petitioner is a foreign entity and that all Claimants meet the amount in controversy threshold. *See* ECF Nos. 1, 486, 499. On January 23, 2023, the Court ordered the Claimants to submit sworn evidence attesting to the facts they contend support diversity jurisdiction. *See* ECF No. 444.[4] The remaining Claimants submitted declarations, drivers' licenses, and/or United States tax returns attesting to their U.S. citizenship and domicile. *See* ECF Nos 449–97. Military personnel are presumed to retain their domicile upon entry into the military and assignment to another state or country absent "clear and

---

[4] Three Claimants subsequently dismissed their claims upon stipulation of all the parties. *See* ECF No. 458.

4

unequivocal evidence" demonstrating an intent to abandon their original domicile and adopt one abroad. *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 725–26 (S.D.N.Y. 2003). The Personal Injury Claimants have thus properly evoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 and timely demanded a jury trial. This invocation places their claims squarely within the protections of the "saving to suitors" clause and preserves their jury rights.

Allowing the Personal Injury Claimants to proceed to a jury trial is also consistent with the policy underlying the "saving to suitors" clause. After all, "[t]he limitation device was not intended to be an offensive weapon for vessel owners," and denying the Personal Injury Claimants a jury trial in Phase II would allow Petitioner to use the limitation proceeding "to strip the claimants of a jury trial" to which they "would otherwise be entitled under the saving to suitors clause." *Complaint of Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604, 612 (S.D.N.Y. 1995). The Court in Phase I "ensure[d] that [Petitioner] will not face liability in excess of the limitation fund" and thus must now "take all steps necessary to assure that claimants are allowed to pursue their common law remedies in accordance with the 'saving to suitors' clause." *Dammers*, 836 F.2d at 759. These steps include allowing the Personal Injury Claimants to try their claims before a jury during Phase II.[5]

---

[5] The Court rejects that the only option is to dismiss the action and allow the Personal Injury Claimants the opportunity to refile elsewhere. *See In re Wood's Petition*, 230 F.2d 197, 199 n.10 (2d Cir. 1956) (noting district court's continuing, but not exclusive, jurisdiction in admiralty after denying limitation). The Court already determined that the proper course is to try liability and damages in bifurcated proceedings. *See* ECF No. 240. Nor is a separate suit necessary to invoke the "saving to suitors" clause in a limitation proceeding. Jury trials have been allowed within the same case, *see Great Lakes Dredge & Dock Co.*, 895 F. Supp. at 614–15, and even within the limitation proceeding itself, *see Red Star Towing & Transp. Co., Inc. v. "MING GIANT"*, 552 F. Supp. 367, 374 (S.D.N.Y. 1982).

5

Arguing for the propriety of a bench trial, Petitioner suggests the Court has discretion and should balance three factors: "(1) the admiralty tradition disfavoring the use of a jury in limitation proceedings; (2) the preservation of the claimants' rights under the savings to suitors clause; and (3) judicial economy." Pet'r's Br. 17, ECF No. 395 (citing *In re Petition of Atlantis Fishing Fleet Corp.*, No. CV-01-8263(SJF)(ASC) 2004 WL 3704912, at *3–4 (Mar. 22, 2004, E.D.N.Y.)). The Court notes that this three-factor test was initially used to determine whether a court could exercise supplemental jurisdiction and send non-diverse claims to a jury, *see Great Lakes*, 895 F. Supp. at 612–13; *Poling*, 776 F. Supp. at 785–86, unlike here where the Personal Injury Claimants properly invoked diversity. Even assuming, however, that this is the correct analytical framework, the Court disagrees that the balance tips in favor of a bench trial.

For one, there are weaker admiralty interests at play in Phase II. Although there is a tradition of bench trials in limitation proceedings, the Court has already honored that tradition by bifurcating proceedings, holding a bench trial, and denying Petitioner limitation in Phase I. *See generally* Phase I Opinion, 2022 WL 2159786. What remains in Phase II is a determination of the Personal Injury Claimants' damages and "courts are demonstrably more willing to circumscribe the admiralty tradition of non-jury trials where parties seek to put claims based on . . . personal injury before a jury." *Great Lakes*, 895 F. Supp. at 614. To the extent Petitioner alleges that *Singapore* substantive law favors a bench trial, as previously stated, federal law determines the availability of jury trials, *see McGuire*, 1 F.3d at 1314, and here, it favors sending personal injury claims to a jury.

Second, the preservation of the Personal Injury Claimants right to a jury trial favors a jury trial. That the Personal Injury Claimants may have failed to invoke the "saving to suitors" clause in their initial pleadings is of no importance. Petitioner cites no case law for the proposition that

6

a party must assert a "saving to suitors" defense, and courts applying the provision analyze whether claimants have adequately pled diversity jurisdiction and a jury trial demand—which the Personal Injury Claimants have—not a right under "saving to suitors." *See, e.g., Great Lakes.*, 895 F. Supp. at 610–11.

Finally, judicial economy also favors trying the claims before a jury. Although this case presents unique challenges, courts adjudicating mass tort actions consistently favor the use of juries. *See, e.g., In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 752 (E.D.N.Y. 1984) (preparing to conduct a jury trial of ten plaintiffs with "typical injuries . . . characteristic of those of the class"); *McMillan v. City of New York*, Nos. 03-CV-6049, 08-CV-2887, 2008 WL 4287573 at *1 (E.D.N.Y. Sept. 17, 2008) (trying some non-diverse personal injury claims in mass tort litigation arising from crash of New York City ferryboat in admiralty before advisory jury). Petitioner also expresses concern about the possibility of inconsistent results if Phase II proceeds to a jury. Pet'r's Br. 18. While this concern is not unfounded, some inconsistent results are likely inevitable, given the number, complexity, and particularized nature of the claims. However, litigating the issue of liability only once—as the Court did here in Phase I—can help "avoid the danger of inconsistent verdicts." *See In re Agent Orange*, 597 F. Supp. at 842.

Finally, Petitioner alleges that an American jury is ill-equipped to determine damages under Singapore law. Pet.'r's Reply Br. 3. This is a proper inquiry for dismissal under *forum non conveniens, see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981), not a jury trial right. Petitioner suggests that *Karim v. Finch Shipping Co. Ltd.*, 94 F. Supp. 2d 727 (E.D. La. 2000), *aff'd*, 265 F.3d 258 (5th Cir. 2001), highlights the difficulties of applying foreign law on damages in a bifurcated limitation action. However, the district court in *Karim* made no express determination that a bench trial was more appropriate than a jury trial; indeed, there is no indication

7

that the seaman in *Karim* ever requested a jury trial or would have been entitled to one. To the extent that *Karim* represents the potential difficulties of applying foreign law to a damages trial being litigated in a United States court, it is widely accepted that "jurors are well suited to decide" issues of damages. *Complaint of Berkley Curtis Bay Co.*, 569 F. Supp. 1491, 1494 (S.D.N.Y. 1983), *judgment aff'd*, *B.C. Bay Co. v. Am. Dredging Co*, 742 F.2d 1431 (2d Cir. 1983). The Court is not willing to preemptively deprive the Personal Injury Claimants of their rights based on an assumption about jury capabilities—especially when Singapore courts follow the doctrine of stare decisis and consider admiralty and tort precedent from common law countries like the United States and United Kingdom as persuasive authority. *See* Goh Yihan & Paul Tan, *An Empirical Study on the Development of Singapore Law*, 23 SING ACAD. OF L. J. 176, 181, 209–11 (2011).

## II.   THE WRONGFUL DEATH CLAIMANTS' CLAIMS WILL ALSO BE TRIED TO A JURY

The Court also concludes that the Wrongful Death Claimants' Phase II proceedings should occur before a jury as well. They also assert a jury right pursuant to diversity jurisdiction; however, unlike the Personal Injury Claimants, the Wrongful Death Claimants pled wrongful death and survival actions. Petitioner maintains that the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301 *et seq*, therefore applies and mandates a bench trial. Pet'r's Br. 11–13 ("[P]rocedurally, the wrongful death claimants' claims fall under § 30306 of DOHSA."); *see* 1 Schoenbaum, *Admiralty and Mar. Law* § 8:2 (6th Ed.) ("A DOHSA action is in admiralty jurisdiction, and there is no right to trial by jury.").

The Court agrees that the Wrongful Death Claims are governed procedurally by DOHSA. Congress designed DOHSA to "provide a uniform and effective wrongful death remedy for survivors of persons killed on the high seas." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 214 (1986); *see also Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 118–19 (1998) (describing DOHSA as

8

the "exclusive source of recoverable damages"). Section 30306 of DOHSA expressly permits U.S. courts to apply substantive foreign law "in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding," 46 U.S.C. § 30306, although American procedural law applies. *See Fernandez v. Linea Aeropostal Venezolana*, 156 F. Supp. 94 (S.D.N.Y. 1957).[6] DOHSA does not carry a right to a jury trial, unless there is a "wholly independent jurisdictional predicate *as well as* an independent cause of action." *Friedman v. Mitsubishi Aircraft Intern, Inc.*, 678 F. Supp. 1064, 1066 n.5 (S.D.N.Y. 1988) (quoting *In re Air Crash Disaster in the Ionian Sea on Sept. 8, 1974*, Nos. 229, M-21-16, 1979 WL 2973 at *2 (S.D.N.Y. Apr. 10, 1979) (emphasis in original)). The Wrongful Death Claimants have not alleged any independent causes of action that would otherwise entitle them to a jury. *Cf. In re Korean Air Lines Disaster of Sept. 1, 1983*, 704 F. Supp. 1135 at 1152 (D.D.C. 1988) *rev'd on other grounds*, 932 F.2d 1475 (D.C. Cir. 1991) (trying plaintiffs' claims before a jury because they pled both DOHSA causes of action and causes of action under Warsaw Convention, which carried right to jury trial). The Wrongful Death Claimants therefore are not independently entitled to a jury trial on their claims.

The Court is ultimately persuaded, however, that the Wrongful Death Claimants' claims should nevertheless be tried before a jury. While a DOHSA action is a "civil action in admiralty,"

---

[6] In *In re Air Crash Off Long Island, New York, on July 17, 1996*, the Second Circuit declined to rule on "the difficult question" of whether DOHSA applies in foreign territorial waters but acknowledged that several courts have held that it does. 209 F.3d 200, 211–12 (2d Cir. 2000). The Court does not interpret the Second Circuit's restraint as nullifying Section 30306 or prohibiting a court from applying foreign law vis-à-vis Section 30306 to a wrongful death claim under DOHSA. The Court is further persuaded by the logic of *In re Air Crash Disaster Near Bombay, India on Jan. 1., 1978*, cited by the Second Circuit, which held that choice-of-law maritime principles counseled that Indian law under DOHSA applied to wrongful death actions arising from a plane crash in the territorial waters of India. 531 F. Supp. 1175 (W.D. Wash. 1982); *see also Park v. Korean Air Lines Co., Ltd.*, No. 83-Civ.-7900 (PNL), 1992 WL 331092 at *8 n. 17 (S.D.N.Y. Oct. 30, 1992).

9

46 U.S.C. § 30306, there is no statutory or constitutional barrier to a jury trial in admiralty proceedings.[7] *See Fitzgerald*, 374 U.S. at 20. Nor is there a provision of DOHSA that *prohibits* a jury trial. *See Peace v. Fidalgo Island Packing Co.*, 419 F.2d 371, 372 (9th Cir. 1969); *Red Star Towing & Transp. Co., Inc. v. "MING GIANT"*, 552 F. Supp. 367, 374–75 (S.D.N.Y. 1982). Particularly given the longstanding tradition of allowing juries to determine damages, *see Complaint of Berkley Curtis Bay Co.*, 569 F. Supp. at 1494, the Court will exercise its discretion and permit the Wrongful Death Claims to be tried before a jury.

As determined above, the Personal Injury Claimants have an independent basis under diversity jurisdiction for trying their claims before a jury. Both the Wrongful Death and Personal Injury claims arise out of the same issues of fact—a single collision between the M/V ALNIC and the U.S.S. JOHN S. MCCAIN. Further bifurcating Phase II between bench and jury trials would be "unduly complicate[d] and confus[ing]. . .and [could] easily result in too much or too little recovery." *Fitzgerald*, 374 U.S. at 19. These problems as especially present here given the numerosity and complexity of the claims and are particularly "acute in determining the amount of damages." *See id.*

The nature of Phase II—where dozens of damages claims will be litigated in a yet-to-be-determined fashion—specifically counsels in favor of a jury trial for all Claimants. When a DOHSA claim is joined with a claim otherwise carrying a jury trial right and the claims involve the same issue of fact, the court may send both claims to the jury. *See MING Giant*, 552 F. Supp.

---

[7] Indeed, the problematic interplay between a lack of jury trials in admiralty is not a new phenomenon. At the very founding of this country, the Declaration of Independence denounced the English Crown's deprivation of the "benefit of trial by jury" in an enumerated grievance directly responding to the Crown's expansion of admiralty court jurisdiction in a blatant attempt to limit jury trials. *See United States v. Chin*, No. 14-10363-RGS, 2017 WL 5557626, at *3 (D. Mass Nov. 17, 2017) *rev'd on other grounds*, 931 F.3d 251 (1st Cir. 2019) (*quoting* THE DECLARATION OF INDEPENDENCE ¶ 20 (U.S. 1776)).

at 374–75 (sending DOHSA and other issues, including limitation, to the jury). The Court sees little reason to separate the ten or so Wrongful Death Claims from the dozens of Personal Injury claims when both sets of damages arise out of the same factual circumstances, particularly if the Court ultimately determines that judicial economy favors trying some combination of Wrongful Death and Personal Injury claims within the same trial.[8]

Petitioner alleges that the logic of *MING GIANT* is inapplicable because the Wrongful Death Claimants *themselves* have not asserted any additional claims carrying a right to a jury trial. As noted above, the Court agrees that this, by itself, does not provide the Wrongful Death Claimants with a jury trial *right*. Courts, however, allow multiple claimants to bring various maritime claims before a jury, even where one claimant asserted a claim with a jury trial right and the other asserted a claim cognizable only in admiralty. *See e.g.*, *Berkley*, 569 F. Supp. at 1493–94 (permitting one claimant's Jones Act and another's non-diverse personal injury claim to both go to a jury); 2 Schoenbaum, *Admiralty and Mar. Law* § 21:15 (6th Ed.) ("In a multiparty, consolidated case, where one or more parties have a right to a jury trial, the claims of all parties must be submitted to the jury to avoid violating a party's Seventh Amendment right."). Thus, the Court will exercise its discretion and try all claims before a jury.

It is hereby **ORDERED** that the Phase II proceedings will be tried before a jury for all claims and Claimants.

Dated: New York, New York
February 28 2023

SO ORDERED

*Paul Crotty*
HONORABLE PAUL A. CROTTY
United States District Judge

---

[8] The Court continues to reserve judgment on the more detailed structure of the Phase II proceedings.

11