## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Complaint,<br><br>of<br><br>ENERGETIC TANK, INC., as Owner of the M/V ALNIC MC, for Exoneration from or Limitation of Liability | Case No. 1:18-cv-1359 (LAP) |

## PETITIONER ENERGETIC TANK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMANTS' DEPENDENCY CLAIMS FOR PECUNIARY DAMAGES AND OTHER CATEGORIES OF DAMAGES DISALLOWED UNDER SINGAPORE LAW

## TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Relevant Factual Background ...................................................................................... 2

    I.      The Doyons ................................................................................................ 3

    II.     Rachel Eckels ............................................................................................ 5

    III.    The Palmers ............................................................................................... 6

    IV.   Darryl Smith .............................................................................................. 7

Summary Judgment Legal Standard ............................................................................ 8

Argument .................................................................................................................... 10

    I.      Petitioner is Entitled to Summary Judgment on Certain Dependency
          Claims for Financial Loss and Loss of Inheritance ............................... 10

          A.     Claimants Do Not Have Evidence to Support Recovery Under
               Dependency Claims for Financial Loss ...................................... 11

          B.     Claimants Have No Evidence to Support Recovery for Loss of
               Inheritance ................................................................................. 15

    II.     Singapore Law Precludes Certain Categories of Claimants' Damages ............... 18

Conclusion ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................8

*Bassis v. Universal Line, S. A.*,
  436 F.2d 64 (2d Cir. 1970)......................................................................................9

*BDG Gotham Residential, LLC v. W. Waterproofing Co.*,
  2024 WL 4349163 (S.D.N.Y. Sept. 30, 2024)........................................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................8

*Complaint of Conn. Nat'l Bank*,
  1989 WL 156294 (S.D.N.Y. Dec. 15, 1989) .........................................................12

*First Nat'l Bank in Greenwich v. Nat'l Airlines, Inc.*,
  171 F. Supp. 528 (S.D.N.Y. 1958) ...................................................................12, 14

*Fong Khim Ling v. Tan Teck Ann*
  [2013] SGHC 104 ..................................................................................................11

*Hanson Ingrid Christina v. Tan Puay Tze*
  [2008] 1 SLR(R) 409 ..................................................................................11, 14, 15

*Kulak v. City of New York*,
  88 F.3d 63 (2d Cir. 1996)........................................................................................9

*Lee Theng Yiow v. Ismail bin Muhamad*
  [2003] SGHC 259 ..................................................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)................................................................................................9

*Petersen Energía Inversora, S.A.U. v. Argentine Republic*,
  2023 WL 2746022 (S.D.N.Y. Mar. 31, 2023), *reconsidered in part*
  2023 WL 3625784 (S.D.N.Y. May 24, 2023) .........................................................9

*Sec. & Exch. Comm'n v. Sason*,
  673 F. Supp. 3d 300 (S.D.N.Y. 2023).....................................................................9

*State Farm Fire & Cas. Co. v. Pentair Flow Techs., LLC*,
  2024 WL 1257091 (S.D.N.Y. Mar. 25, 2024) ........................................................9

*Sturgis v. R & L Carriers, Inc.*,
    2021 WL 795665 (N.D. Ind. Mar. 2, 2021) ........................................................12, 13

*Tan Gek Suan Constance v. Lau Kean Wah*
    [2017] SGHC 152 ...........................................................................................11, 13

*Zhu Xiu Chun v. Rockwills Trustee Ltd*
    [2016] SGCA 52 .............................................................................................10, 15

*Zicherman v. Korean Air Lines Co.*,
    516 U.S. 217 (1996) ..............................................................................................19

**Statutes**

Civil Law Act §§ 20, 22 .........................................................................11, 12, 18, 19

**Other Authorities**

Carrie Chan et al., *Assessment of Damages: Personal Injuries and Fatal Accidents*
    (3rd edition), LexisNexis, 2017 ...........................................................................11

Fed. R. Civ. P. 44.1 ...............................................................................................9

Fed. R. Civ. P. 56 ...............................................................................................8

## INTRODUCTION

Petitioner Energetic Tank, Inc. moves for summary judgment on categories of damages sought by certain claimants either because there is no evidence to support their recovery under Singapore law or because they are categorically unavailable under Singapore law. Specifically, Claimants Karen Doyon, Rachel Eckels, Theresa Palmer, and Darryl Smith are surviving parents of deceased U.S. Navy sailors Dustin Doyon, Timothy Eckels, Jr., Logan Palmer, and Kenneth Smith, respectively, who died as a result of the collision between the U.S.S. JOHN S. MCCAIN and M/V ALNIC MC. They each bring wrongful death claims on their own behalf and as representatives of their decedents' estates.

In cases involving wrongful death, Singapore law delineates two paths for recovery: (1) the decedent's family can seek to recover on a dependency claim for their own financial loss caused by the death, and (2) the estate can recover for the decedent's general damages, including pre-death pain and suffering. As to a dependency claim, the decedent's family members can recover for lost financial support if they can prove a reasonable expectation of pecuniary benefit based on facts suggesting an inference of financial support. The decedent's family members can also recover for loss of inheritance if they can establish (1) a reasonable expectation of pecuniary benefit based on the decedent's savings, (2) that the decedent "would be likely" to have given the claimant an inheritance, and (3) the amount of any likely inheritance. Finally, certain family members of the decedent, including spouses, parents, children, and siblings, may also be eligible for *nonpecuniary* damages under Singapore's Civil Law Act's statutory bereavement provision. But the statutory bereavement provision is the only nonpecuniary recovery allowed for the decedent's family members.

Here, Claimants seek a myriad of damages spanning from pain and suffering to loss of earning capacity and inheritance to loss of nurture, guidance, care, and instruction. Dkt. 72 ¶ 14;

Dkt. 76 ¶ 14; Dkt. 77 ¶ 14; Dkt. 79 ¶ 14. For the following reasons, Petitioner is entitled to summary judgment on several of these categories of damages.

First, Claimants have no evidence to support their dependency claims for financial loss and loss of inheritance. Indeed, Claimants admit in their depositions that decedents did not provide them with regular or material financial support, and there is no evidence that decedents planned to support them financially in the future or that Claimants reasonably expected to receive an inheritance. In the absence of this evidence, Claimants are not entitled to recover on their dependency claims for financial loss or loss of inheritance.

Second, Claimants' pleadings seek damages that are categorically unavailable in wrongful death claims under Singapore law. Singapore law does not recognize damages for loss of consortium, loss of enjoyment of life, loss of society and companionship, or loss of nurture, guidance, care, and instruction. Instead, as to nonpecuniary losses, Claimants are limited to recovery of bereavement awards under Singapore's statute, which requires no specific evidence of injury or loss.[1]

For these reasons, the Court should grant partial summary judgment on Claimants' dependency claims and other categories of damages disallowed under Singapore law.

## RELEVANT FACTUAL BACKGROUND

Claimants Doyon, Eckels, Palmer, and Smith filed nearly identical Answers and Claims seeking to recover several categories of damages, including lost future pecuniary support, lost earning capacity and inheritance, past lost wages, lost fringe benefits, lost inheritance, lost funeral

---

[1]    Wrongful Death Claimants are precluded from seeking punitive and aggravated damages for the reasons set forth in Petitioner's partial summary judgment motion on punitive and aggravated damages. *See* Memorandum of Law in Support of Motion for Partial Summary Judgment on Punitive and Aggravated Damages.

expenses, loss of enjoyment of life, loss of society and companionship, loss of nurture, guidance, care, and instruction, and loss of services and support, as well as damages for decedents' pain and suffering and for punitive damages. Dkt. 72 ¶¶ 15-16; Dkt. 76 ¶¶ 15-16; Dkt. 77 ¶¶ 15-16; Dkt. 79 ¶¶ 15-16; *see* Petitioner Energetic Tank, Inc's Omnibus Statement of Undisputed Material Facts Supp. Mots. for Summary Judgment ("SUF") ¶¶ 2, 11-14, 16, 36, 50, 65.

## I.    The Doyons

Surviving parents of decedent Dustin Doyon, Claimant Karen Doyon and non-party Brian Doyon, allege they were "dependents" of their son and seek to recover pecuniary damages resulting from his death. SUF ¶¶ 11, 15-17.

While serving in the U.S. Navy between 2015 and 2017, Dustin represented that he had "no" dependents and was not providing financial support to anyone. SUF ¶ 19. The Doyons' deposition testimony is consistent with Dustin's representations, and he never told his parents that he joined the Navy to support them. SUF ¶¶ 21, 23. Although he occasionally sent his parents some cash, it was never for the purpose of financial support and consisted only of small amounts. SUF ¶¶ 20-21. For example, Karen testified that Dustin would send them "[f]ifty or sixty dollars" in cash—sent as "money in the mail with letters"—on a "sporadic" basis. SUF ¶¶ 20, 21; *see* Tr. Karen Doyon 50:17-51:18, 50:4-16 ("on occasion"), 51:5-15 ("less frequently than monthly"), 61:18-62:2 (son sent her money "spontaneously"), Declaration of Christopher M. Odell in Support of Petitioner Energetic Tank, Inc's Omnibus Statement of Undisputed Material Facts in Support of Motions for Partial Summary Judgment ("Odell Decl.") Ex. 1; *see also id.* at 51:19-21 (never received more than $100 at once). Brian confirmed that while in the Navy, Dustin sent them money "[e]very now and then so we could treat ourselves to dinner." SUF ¶ 21. The Doyons did not produce any records in discovery reflecting any such remittances. SUF ¶ 18. The Doyons also never discussed these irregular cash gifts with Dustin during his lifetime, including as to the timing,

3

amount, or purpose, of such remittances. SUF ¶ 22; *see* Tr. Karen Doyon 61:22-62:2 (Q. "[D]id you ever have a discussion with him about those payments? A. No, sir. Q. It just came spontaneously? A. That is correct.").

The Doyons admit they did not expect their son to support them in the future and did not anticipate receiving any particular financial benefits from him. SUF ¶ 33. Brian Doyon conceded he was "not even sure" whether Dustin could have supported him and Karen in the future. SUF ¶ 33. Karen likewise testified that she and her husband "didn't have an expectation" of receiving money from their son, had he lived. SUF ¶ 33. To be sure, Karen speculated that her son *might* have supported her and her husband, but could point to no evidence to substantiate her belief. SUF ¶¶ 33-34; Tr. Karen Doyon 62:3-11 (speculating that "[i]f I know my son, they *probably* would have" continued in the future and "[i]f I know my son, yes, he would have" started to send me more money than he sent (emphasis added)).

Far from supporting his parents, Dustin's parents appeared to have subsidized some of his expenses. While he was serving in the Navy, Dustin remained on the Doyons' "family phone bill" and "our family insurance," and he reimbursed his parents for his portion of those bills. SUF ¶ 24. Prior to joining Navy in 2015, Dustin lived at his parents' house for two to three years, where he paid his parents $150 monthly in rent. SUF ¶ 26. To the extent that he provided household services while living at home with his parents, that was simply "part of him living in [their] home." SUF ¶ 26. Notably, the Doyons did not hire anyone to replace Dustin's household services after he left to join the Navy. SUF ¶ 26.

Dustin earned around $22,524 per year in the Navy, and at death, he had $3,152 in his checking account and limited personal property, but no investments or real property. SUF ¶¶ 27, 29. Dustin died unmarried and intestate. SUF ¶ 15. Karen believed she was designated as the

beneficiary of her son's checking account, SUF ¶ 30, and his Navy unpaid pay and allowances and gratuity pay, SUF ¶ 32, but was unaware whether he had a savings account. SUF ¶ 31. Karen was also unaware of her son's spending or expenses day-to-day or week-to-week expenses on food, clothing, or amusement and therefore did not know what, if any, funds Dustin would have had left to provide as support to her and Brian. SUF ¶ 28.

## II.    Rachel Eckels

Surviving parent of decedent Timothy Eckels, Jr., Claimant Rachel Eckels, alleges she is her son's "dependent," and seeks to recover alleged pecuniary losses as a result of her son's death. SUF ¶¶ 11, 35-37. Timothy's father, Timothy Eckels, Sr., is not a party to the lawsuit and does not assert a claim for pecuniary losses as a result of his son's death. SUF ¶ 37.

While serving in the U.S. Navy between 2013 and 2017, Timothy represented to the Navy on several occasions that he had "no" dependents and was not providing financial support to anyone. SUF ¶ 39. Rachel confirmed that Timothy did not send her money regularly or provide her a specific amount of money each month or each year. SUF ¶ 40. The occasional small amounts of cash that he sent her included "a birthday card, Christmas card with fifty to a hundred dollars" and "[o]ccasionally he would send a note that he "was just thinking of" her with a gift of "[b]etween a hundred to two hundred" dollars, or send gifts—cards with money—to other family members on birthdays and at Christmas. SUF ¶ 41. Rachel did not produce any records reflecting any such gifts or any evidence of her son providing financial support before he enlisted in the Navy. SUF ¶¶ 38, 42. Rachel has also not borrowed money or incurred expenses due to her son's death. SUF ¶ 43.

While Rachel speculated that Timothy *might* take care of her financially because he was "a mama's boy" and they were "close-knit," she did not produce any documents to substantiate her belief. SUF ¶ 47; Tr. Rachel Eckels 70:6-71:3, 73:10-21 (recounting conversation with son

about "projected plan was he was going to start becoming a culinary chef"; they "were going to have a business together"; and they "would live in the same vicinity"), Odell Decl. Ex. 9. Timothy also never discussed sending Rachel money in the future. SUF ¶ 48.

Timothy's annual salary was about $25,117 in the Navy, but Rachel was unaware of her son's annual income at the time he died or his monthly spending and therefore did not know what, if any, funds Timothy would have had leftover to provide as support to her. SUF ¶ 44. Rachel produced no evidence of Timothy's assets at death, including checking and savings account information. SUF ¶ 45. Timothy died unmarried and intestate. SUF ¶ 35. Rachel was not designated as a beneficiary of Timothy's Servicemembers' Group Life Insurance policy or Navy unpaid pay and allowances and gratuity pay. SUF ¶ 46.

## III.   The Palmers

Surviving parents of decedent Logan Palmer, Claimant Theresa Palmer and non-party Sidney Palmer, seek to recover as "dependents" of their son for alleged pecuniary losses as a result of their son's death. SUF ¶¶ 11, 49-51.

While serving in the U.S. Navy from 2016 to 2017, Logan represented to the Navy that he had "no" dependents and was not providing financial support to anyone. SUF ¶ 53. The Palmers' testimony confirms this. SUF ¶ 54; *see* Tr. Sidney Palmer 38:2-10 (Q. "And according to the data that the Navy had at the time this was prepared, Logan had no primary dependents. Is that a correct statement, as far as you're aware? A. Correct."), Odell Decl. Ex. 25. Logan did not send his parents money regularly or tell them that he would send them a specific amount each month or year. SUF ¶ 55; Tr. Sidney Palmer 28:13-19 (provided them "odd funds now and then"), 29:14-22 (no discussion about him "sending you money"). While the Palmers speculated that Logan might have supported them in the future if something "catastrophic" were to happen, they did not produce records to substantiate such support. SUF ¶¶ 52, 62-63. And to the extent that Logan provided

6

household services while living at home with his parents before he joined the Navy, such as fixing the dishwasher or contributing towards his share of groceries and gas, the Palmers did not hire anyone to replace Logan's household services after he left to join the Navy. SUF ¶ 56.

Logan died unmarried and intestate, and he had no estate or jointly owned property. SUF ¶ 49. Logan had some savings at death (about $21,000), and his mother was unaware that she was the beneficiary of his Navy unpaid pay and allowances and gratuity pay. SUF ¶¶ 59, 61. The Palmers were also unaware of Logan's annual income when he died (monthly earnings of about $2,088, taxable wages) or his monthly spending and had no information about his supposed investments. SUF ¶¶ 57-58, 60.

## IV.    Darryl Smith

Surviving parent of decedent Kenneth Smith, Claimant Darryl Smith, alleges he is a "dependent" of his son in this lawsuit and seeks to recover alleged pecuniary losses resulting from his death. SUF ¶¶ 11, 64-66. Kenneth's mother, April Brandon, is not a party to the lawsuit and does not seek to recover as a dependent. SUF ¶ 66.

While serving in the U.S. Navy between 2014 and 2017, Kenneth represented to the Navy that he had no dependents and did not financially support anyone. SUF ¶ 68. Darryl agreed that he did not "rely[] upon [Kenneth] in any way for some source of income to supplement [his] own income as an employee of Lockheed Martin." SUF ¶¶ 72-73. His son did not send him money while in the Navy or represent that he would do so. SUF ¶ 69; Tr. Darryl Smith 88:24-89:9 (Kenneth did not pay him "on a regular basis"), 93:16-23 (no "specific agreement" regarding remittances), Odell Decl. Ex. 28. And while Kenneth occasionally sent his father physical gifts ("big ticket" items), it was not for financial support, and Darryl did not produce any documents evidencing these gifts. SUF ¶¶ 70-71. Although Darryl testified about a "plan" to live with his son post-Navy where Kenneth would "work at Lockheed [Martin]," and pay Claimant Smith an

estimated "eight hundred [dollars] a month," Darryl never discussed this "plan" with Kenneth. SUF ¶ 81. Nor did he produce any documents about such plan. SUF ¶¶ 67, 82.

Before joining the Navy, Kenneth lived at home with Darryl and contributed to bills, bought groceries, paid for gas, and did household chores. SUF ¶ 75. To the extent he provided household services while living at home with Darryl, that was simply him "doing his part." SUF ¶ 75. And since Kenneth's passing, Darryl has not had to borrow money or take out loans. SUF ¶ 74.

Kenneth was earning $25,321 per year in the Navy, SUF ¶ 76, and at death, his checking and savings accounts contained approximately $23,000. SUF ¶ 79. Kenneth had no other assets and died unmarried and intestate. SUF ¶ 65. Darryl did not know that his son had reduced him from sole beneficiary of his Navy unpaid pay and allowances and gratuity pay and life insurance policy to joint beneficiary with April. SUF ¶ 80. Darryl was also unaware of his son's annual income at the time of his death but testified that Kenneth bought "a lot of electronics" for himself worth about "$300-400/month." SUF ¶¶ 77-78.

## SUMMARY JUDGMENT LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the moving party does not have the burden of proof, the moving party may satisfy its initial burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has fulfilled its preliminary burden, the onus shifts to the nonmoving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The party asserting that a fact is genuinely disputed must support their assertion by 'citing

to particular parts of materials in the record' or 'showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *State Farm Fire & Cas. Co. v. Pentair Flow Techs., LLC*, 2024 WL 1257091, at *2 (S.D.N.Y. Mar. 25, 2024) (alteration in original) (quoting Fed. R. Civ. P. 56(c)(1)). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The Court's "goal should be to isolate and dispose of factually unsupported claims." *Sec. & Exch. Comm'n v. Sason*, 673 F. Supp. 3d 300, 308 (S.D.N.Y. 2023) (internal quotation marks and citation omitted).

Partial summary judgment is appropriate to eliminate categories of damages before trial. *See, e.g.*, *BDG Gotham Residential, LLC v. W. Waterproofing Co.*, 2024 WL 4349163, at *7 (S.D.N.Y. Sept. 30, 2024). To defeat a motion for summary judgment on the ground that plaintiff "has not presented any evidence of its damages," a "plaintiff must *present* (not merely assert that it is capable of presenting) evidence showing 'the *amount* of such damages (or at least a fair estimation of same)[.]'" *Id.* at *14 (emphases in original) (citation omitted).

Questions of Singapore law are legal issues for the Court to decide and are appropriate for resolution on summary judgment. Fed. R. Civ. P. 44.1; *Bassis v. Universal Line, S. A.*, 436 F.2d 64, 68 (2d Cir. 1970). Disputes about the meaning, interpretation, and applicability of foreign law, including disagreements between the parties' experts, raise questions of law and do not create genuine issues of material fact. *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, 2023 WL 2746022, at *4 (S.D.N.Y. Mar. 31, 2023), *reconsidered in part* 2023 WL 3625784 (S.D.N.Y. May 24, 2023) (Preska, J.).

## ARGUMENT

**I.    PETITIONER IS ENTITLED TO SUMMARY JUDGMENT ON CERTAIN DEPENDENCY CLAIMS FOR FINANCIAL LOSS AND LOSS OF INHERITANCE**

Under substantive Singapore law, which governs Claimants' damages,[2] there are two categories of damages that are recoverable under a dependency claim for wrongful death: (i) the decedent's family members may recover for their financial loss if they can establish a "reasonable expectation" of pecuniary benefit of future financial support based on facts suggesting an inference of financial support; or (ii) family members may recover for a lost inheritance if they can establish a "reasonable expectation" of pecuniary advantage based on the decedent's savings and that the decedent "would be likely" to have given them an inheritance. Dkt. 582-7 ¶ 52;[3] Dkt. 584-3 at 140:17-23, 148:14-149:20;[4] *Zhu Xiu Chun v. Rockwills Trustee Ltd* [2016] SGCA 52 at [147]-[149], Odell Decl. Ex. 64. Under both categories, the dependent has the burden of proof to establish both the *existence* and the *quantum* of a reasonable expectation of pecuniary loss from the deceased. *See* Dkt. 582-7 ¶ 52; Dkt. 584-3 at 141:15-20 ("Q. The focus of the court isn't on the need of the dependent but on the reasonable expectation of the dependent. A. Yes."); *see also id.* at 140:12-141:8, 142:18-24. Claimants here do not have evidence to support recovery of damages for lost financial support or for loss of inheritance.

---

[2]    Phase II will be governed by Singapore law. Dkt. 247; *see* Dkt. 267.

[3]    Petitioner's Singapore law expert, Professor Quek Anderson, is an Associate Professor of Law in the Singapore Management University's School of Law, where she has taught since 2016. Dkt. 582-7 ¶ 1. Between 2009 and 2016, Professor Anderson served as a District Judge of the Singapore State Courts. *Id.* ¶ 2.

[4]    Dr. Christian Witting is Claimants' Singapore law expert.

A.    **Claimants Do Not Have Evidence to Support Recovery Under Dependency Claims for Financial Loss**

1.    **Singapore Law Requirements to Establish Dependency Claims for Financial Loss**

A dependency claim for financial loss allows "for those who were *financially dependent on the deceased*" to "be compensated for the loss of financial support upon the deceased's death." *Tan Gek Suan Constance v. Lau Kean Wah* [2017] SGHC 152 at [11] (emphasis added), Odell Decl. Ex. 65. A dependent must establish an actual basis for a reasonable expectation of future financial support, but for the decedent's death, "based on *facts* suggesting an inference of financial support." *See* Dkt. 582-7 ¶ 52 (emphasis added); Dkt. 584-3 at 140:17-23, 141:9-14. Singapore courts typically find that a dependent had a "reasonable" expectation of a pecuniary benefit where the decedent provided regular contributions on which the dependent relied. *See Fong Khim Ling v. Tan Teck Ann* [2013] SGHC 104 at [32], Odell Decl. Ex. 66. The "***mere speculative possibility of receipt***" of money is insufficient for a financial loss dependency claim. *Hanson Ingrid Christina v. Tan Puay Tze* [2008] 1 SLR(R) 409 at [31], [40] (emphasis added), Odell Decl. Ex. 67; Carrie Chan et al., *Assessment of Damages: Personal Injuries and Fatal Accidents* (3rd edition), LexisNexis, 2017 ("State Courts, *Assessment of Damages*") ¶ 9-41 (same), Odell Decl. Ex. 69. "The task for the court is thus to sort out the genuine pecuniary losses from the speculative losses", assessing whether a dependent can prove their losses, "and then to determine whether the deceased would have been able to meet those expenses." *Hanson Ingrid Christina* [2008] 1 SLR(R) at [40]; *see* State Courts, *Assessment of Damages* ¶ 9-41; Dkt. 582-7 ¶ 52. "[W]here no loss is proven, the [dependency] claim . . . cannot be sustained." *Tan Gek Suan Constance* [2017] SGHC at [10]; *see* Dkt. 582-7 ¶¶ 49-50; *see also* Civil Law Act §§ 20, 22.

### 2. Claimants Do Not Have Evidence to Establish the Required Elements for Financial Loss

Claimants cannot meet their burden to show that they had a "reasonable expectation" of receiving ongoing financial support but for the deaths of their decedents.[5] In each case, Claimants acknowledge that the little money they received from their sons was irregular (or "sporadic"), was not intended to constitute an ongoing source of financial support, and is properly characterized as ordinary gift-giving from an adult child to his parents. *See Complaint of Conn. Nat'l Bank*, 1989 WL 156294, at *2 (S.D.N.Y. Dec. 15, 1989) (finding the relatives were not dependents because "[e]verything provided by decedent to his relatives was in the form of a gift[,]" including monetary gifts). That decedents may have contributed to household expenses or completed chores while living at home before enlisting in the Navy is not evidence of financial support, nor is it sufficient to establish a reasonable expectation of pecuniary advantage. An adult child's regular contribution to household expenses *while living at home with their parents* for rent, bills, groceries, and/or gas *that covers their portion of daily living expenses* is not a pecuniary benefit. *See Sturgis v. R & L Carriers, Inc.*, 2021 WL 795665, at *2 (N.D. Ind. Mar. 2, 2021) (explaining that reimbursement for accommodations like board and lodging "won't establish dependency"); *First Nat'l Bank in Greenwich v. Nat'l Airlines, Inc.*, 171 F. Supp. 528, 535 (S.D.N.Y. 1958) (groceries constitute gifts).

#### a. The Doyons

Karen and Brian Doyon cannot meet their burden to show that they had a "reasonable

---

[5] Nor is there any evidence that the Claimants were required to pay any funeral expenses, though they appear to seek damages for such expenses. SUF ¶¶ 11, 16, 36, 50, 65. Singapore law permits a prevailing wrongful-death plaintiff to recover "funeral expenses which have been *incurred*" by the dependent. *See* Witting, Mem. of Advice ¶ 64 (emphasis added), Odell Decl. Ex. 57; Civil Law Act § 20(4) ("If the dependants have incurred funeral expenses in respect of the deceased, damages may be awarded in respect of those expenses."). But here, there is no evidence that any Claimant incurred any recoverable funeral expenses.

expectation" of receiving ongoing financial support but for the death of their son, Dustin. Dustin himself told the Navy that he had no dependents, and there is no evidence that he joined the Navy to support his parents. SUF ¶¶ 19, 23. That the Doyons "sporadic[ally]" received $50 to $60 in cash from Dustin while in the Navy does not establish regular financial support. SUF ¶ 20. As the Doyons conceded, they did not know how their son could have supported them financially and "didn't have an expectation" of any such support. SUF ¶ 33. This is insufficient under Singapore law. *See* Dkt. 582-7 ¶ 52.

There is also no evidence that Dustin's contributions to his parents—*while living at home with them* before enlisting in the Navy—for rent and household chores covered anything beyond Dustin's own daily living expenses, SUF ¶ 26, so they cannot be classified as financial support. *See Sturgis*, 2021 WL 795665, at *2. The Doyons also did not hire any replacement services when Dustin moved out to join the Navy. SUF ¶ 26. That Dustin reimbursed his parents for *his own portion* of the family's phone bill and the family's car insurance while serving in the Navy, SUF ¶ 24, likewise does not constitute financial support. Thus, the Doyons cannot meet their burden of proof to sustain a dependency claim for financial loss.

### b.    Rachel Eckels

Rachel Eckels did not have a reasonable expectation of ongoing financial support from her son, Timothy, but for his death, because Timony did not provide her any financial support while he was in the Navy, nor promise her any in the future. SUF ¶¶ 40, 48. Timothy did not name Rachel as a dependent on his Navy paperwork nor represented that he was providing her financial support. SUF ¶ 39. Rachel has not incurred any expenses or had to borrow money to support herself since his passing. SUF ¶ 43. Thus, she was not financially dependent on him. *See Tan Gek Suan Constance and another* [2017] SGHC at [10]-[11].

Although Timothy occasionally sent Rachel small cash *gifts* in the amount of $100 to $200

when he was "thinking of" her, and $50 to $100 cash gifts to other family members on their birthdays and at Christmas, SUF ¶ 41, there is no evidence those gifts were provided—or were meant to provide—financial support, SUF ¶ 42. Similarly, Rachel's "goal" of opening a family business with her son is purely speculative and hypothetical: Timothy would have had to leave the Navy, switch careers, and complete additional education to become a culinary chef. SUF ¶ 47. Such speculation cannot sustain her claim. *See Hanson Ingrid Christina* [2008] 1 SLR(R) at [31], [40].

### c.    The Palmers

Theresa and Sidney Palmer cannot meet their burden to show that they had a "reasonable expectation" of receiving ongoing financial support but for the death of their son, Logan. Indeed, they admitted they were not financially dependent on Logan, and he did not support them financially while he was in the Navy. SUF ¶¶ 53-55. These undisputed facts doom their claim.

That Logan contributed as an adult—while *living at home with his parents* before joining the Navy—towards *his share* of the grocery and gas bills and completed household chores in the house in which he then lived, SUF ¶ 56, does not establish any ongoing financial support. *See First Nat Bank in Greenwich*, 171 F. Supp. at 535. The Palmers have no records to evidence those reimbursements, and did not hire any replacement services to replace these contributions. SUF ¶ 56. Nor is the Palmers' speculative and unsubstantiated belief that Logan *might* have supported them in the future, SUF ¶¶ 62-63, sufficient to establish a reasonable expectation of future financial support. *See Hanson Ingrid Christina* [2008] 1 SLR(R) at [31], [40].

### d.    Darryl Smith

Darryl Smith cannot meet his burden to show that he had a "reasonable expectation" of receiving continued financial support from his son, Kenneth Smith. Darryl admitted—consistent with Kenneth's representations to the Navy—that Kenneth did not send him money while Kenneth

was in the Navy, and he did not rely on Kenneth for financial support. SUF ¶¶ 68-69, 72-73. That Darryl occasionally received "big ticket" gifts from Kenneth, SUF ¶¶ 70-71, does not establish regular financial support on which he relied to maintain his lifestyle.

Darryl's speculation about a future "plan" of living with Kenneth and Kenneth paying him $10,000 per year after leaving the Navy—a "plan" that he never discussed with Kenneth—cannot sustain his claim, particularly because it is not substantiated by any other evidentiary support. SUF ¶¶ 81-82; *see Hanson Ingrid Christina* [2008] 1 SLR(R) at [42]. Kenneth's contributions towards bills, groceries, and chores *while living with Darryl* before joining the Navy are similarly insufficient. That Kenneth contributed as an adult—while living at home with Darryl before joining the Navy—towards *his share* of the bills and completed household chores in the house in which he then lived, SUF ¶ 75, does not establish any ongoing financial support.

For these reasons, Petitioner is entitled to partial summary judgment on Claimants' dependency claims for financial loss.

### B.    Claimants Have No Evidence to Support Recovery for Loss of Inheritance

#### 1.    Singapore Law Requirements to Establish Recovery for Loss of Inheritance

For a dependency claim for loss of inheritance, a dependent does not have a *reasonable* expectation of receiving an inheritance—and thus cannot collect an inheritance on such a claim—where, for example, the deceased had hardly any savings. *See, e.g.*, *Zhu Xiu Chun* [2016] SGCA at [149] ("It was also relevant in that case that the deceased hardly had any savings to begin with, which evidenced that it was unlikely that her [retirement savings plan] monies would constitute part of her estate."). A dependent's expectation of inheritance is also likely to be found unreasonable where it is unlikely that he or she would have outlived the decedent, had the decedent died a natural death. *Id.* at [148]-[149].

15

### 2.    Claimants Do Not Have Evidence to Establish Loss of Inheritance

None of Claimants can meet their burden to establish a "reasonable" expectation of an inheritance. Claimants have put forth no evidence that decedents "would be likely" to have given them an inheritance. As shown above, in each case, Claimants acknowledge that decedents had limited savings, no real property, and limited to no personal property. Claimants also cannot say what, if any, funds decedents would have had leftover to provide as support to them. Because Claimants have no evidence of a "reasonable expectation" of a pecuniary advantage or expectation to receive an inheritance—and certainly no basis for the quantum of any inheritance—Claimants cannot meet their burden of proof under Singapore law, and their loss of inheritance claims should be dismissed.

### a.    The Doyons

Dustin died with minimal assets—$3,152 in checking, limited personal property, and no established investments or real property. SUF ¶ 29. The Doyons have provided no evidence as to how, despite this lack of assets, Dustin, their deceased 26-year-old son, would have had funds to leave as an inheritance. The Doyons also had no information about Dustin's spending, expenses, or savings account, SUF ¶¶ 28, 31, further undermining any "reasonable" expectation that there would have been funds remaining for an inheritance. And because Dustin died without a will, SUF ¶ 15, there is no evidence of how he intended to have any such funds distributed. That Dustin may have designated his mother as a beneficiary of his checking account and his Navy unpaid pay and allowances and gratuity pay—of which she was unaware—, SUF ¶¶ 30, 32, is insufficient to meet the Doyons' burden of proof to establish a reasonable expectation of pecuniary advantage for a dependency claim for loss of inheritance. Notably, it cannot establish, without impermissible speculation, (1) that he actually would have left money to his mother in addition to the amounts she may have gotten as a beneficiary to other accounts, or (2) that he would have had any money

to leave to anyone when he died, let alone the amount.

### b.    Rachel Eckels

Rachel Eckels has put forth insufficient evidence to establish a reasonable expectation of receiving an inheritance from her deceased 23-year-old son, Timothy, or the amount, and there is no evidence that Timothy "would be likely" to have given Rachel an inheritance. Rachel has put forth *no evidence* about Timothy's financial assets at death. SUF ¶ 45. Rachel also had no information about her son's annual income or monthly expenses, SUF ¶ 44, so she has no basis for knowing whether he might have had any funds leftover for an inheritance. Moreover, Timothy died intestate and did not designate Rachel as a beneficiary or co-owner of any of his accounts, SUF ¶¶ 35, 45, such that there is no evidence of how he intended to have any such funds distributed. And with a salary of only $25,117—and no known savings nor real or personal property—it is unlikely that Timothy would have saved a significant amount of funds for Rachel to inherit at some point in the future. SUF ¶¶ 44-45.

### c.    The Palmers

The Palmers cannot establish that they had a "reasonable expectation" of an inheritance from their 23-year-old son, Logan, or that he "would be likely" to have given them an inheritance. Logan died without a will, and had minimal savings. SUF ¶ 49, 59. Although the Palmers allege he had investments, no documentation of such investments was produced, and Theresa does not know the amounts. SUF ¶ 60. Theresa was also unaware of her son's annual income at the time he died or his monthly spending, SUF ¶ 58, so the Palmers have no basis for any *expectation* of the funds Logan would have had to provide for them. Although Theresa was the beneficiary of Logan's unpaid pay and allowances and gratuity pay (of which she was unaware), SUF ¶ 61, that is insufficient to show expectation of a separate inheritance—and certainly not an expectation as to the amount of such inheritance, particularly given his annual Navy salary of approximately

17

$25,066, SUF ¶ 59.

### d. Darryl Smith

Darryl Smith has put forth insufficient evidence to establish a reasonable expectation of inheritance from his deceased 22-year-old son, Kenneth, or that Kenneth "would be likely" to have given him an inheritance. Darryl had no information about his son's annual income, SUF ¶¶ 76-77, such that Darryl has no basis for any *expectation* of the funds Kenneth would have had to provide for him. The little information that he *did* know about Kenneth's high spending on amusement like electronics totaling about "$3- or 400 a month in general" is no help. SUF ¶ 78. This, along with the fact that Kenneth died intestate with no assets or real or personal property, and with limited savings and a Navy salary of only $25,321, SUF ¶ 76, 79, makes it unlikely that Kenneth would have saved a significant amount of funds for Darryl to one day inherit. Further, that Darryl and April were beneficiaries of Kenneth's life insurance policy and unpaid pay and allowances and gratuity pay, SUF ¶ 80, is insufficient to meet Darryl's burden of proof to establish a reasonable expectation of pecuniary advantage for a dependency claim for loss of inheritance.

For these reasons, Petitioner is entitled to partial summary judgment on Claimants' dependency claims for loss of inheritance.

## II. SINGAPORE LAW PRECLUDES CERTAIN CATEGORIES OF CLAIMANTS' DAMAGES

Petitioner is also entitled to summary judgment on several additional categories of damages that Claimants plead but that are not recoverable as a matter of Singapore law. Under Singapore law, damages for loss of enjoyment of life, loss of society and companionship, and loss of nurture, guidance, care, and instruction are not recoverable in a negligence claim. Dkt. 582-7 ¶ 51. It instead provides that dependency awards may include a statutory provision for bereavement damages under Section 21(2) of Singapore's Civil Law Act. *Id.* ¶¶ 51, 54; Civil Law Act §§ 20(1), (2), (4)-

(5), 21. This is the sole category of non-pecuniary damages recoverable by a survivor in a wrongful death claim under Singapore law.

Singapore law also disallows loss of consortium damages as a matter of law. Dkt. 582-7 ¶¶ 54-55; *Lee Theng Yiow v. Ismail bin Muhamad* [2003] SGHC 259 at [3], [21] (claim for loss of consortium, care and concern "was not allowed" because Singapore's Civil Law Act "makes no provision for such a claim."), Odell Decl. Ex. 68. Claimants' own Singapore law expert, Dr. Witting, agrees that he "ha[s]n't come across this as a head of damage." Dkt. 584-3 at 153:3-7, 161:7-12 ("Q. And that supports your earlier view that loss of consortium is not a recognized claim under Singapore law, right? A. Yeah, I am assuming that is the case, yes.").

Thus, the court should enter summary judgment for Petitioner on Wrongful Death Claimants' requests for nonpecuniary damages for loss of enjoyment of life, loss of society and companionship,[6] and loss of nurture, guidance, care, and instruction.

## CONCLUSION

For these reasons, the Court should grant partial summary judgment and dismiss Claimants' (1) dependency claims for pecuniary damages, and (2) request for categories of damages not available under Singapore law.

Dated: December 20, 2024                    Respectfully submitted,

                                            *S/*Christopher M. Odell
                                            Christopher M. Odell
                                            christopher.odell@arnoldporter.com
                                            Amanda Thomson
                                            amanda.thomson@arnoldporter.com
                                            ARNOLD & PORTER KAYE SCHOLER LLP
                                            700 Louisiana St., Ste. 4000
                                            Houston, TX 77098
                                            T: (713) 576-2400

---

[6]  Loss-of-society damages are a category of non-pecuniary damages. *See, e.g.*, *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 230-31 (1996).

Diana Sterk
diana.sterk@arnoldporter.com
James D. Herschlein
James.herschlein@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th St.
New York, NY 10019
T: (202) 942-5000

David J. Weiner
david.weiner@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
T: (202) 942-5000

Thomas H. Belknap Jr.
thomas.belknap@blankrome.com
Noe S. Hamra
noe.hamra@blankrome.com
Alan M. Weigel
alan.weigel@blankrome.com
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
T: (212) 885-5000

*Counsel for Petitioner Energetic Tank, Inc., as
Owner of the M/V Alnic MC*